ATTORNEY FOR APPELLANT
Trenna S. Parker
Noblesville, Indiana

ATTORNEYS FOR APPELLEE
Eric J. Benner
Laurie D. Johnson
Noblesville, Indiana



## In the
## Indiana Supreme Court

FILED

Jun 29 2012, 2:35 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 29S02-1109-DR-530

ANNETTE (OLIVER) HIRSCH,

*Appellant (Petitioner below),*

v.

ROGER LEE OLIVER,

*Appellee (Respondent below).*

Appeal from the Hamilton Superior Court, No. 29D02-0411-DR-988
The Honorable Daniel J. Pfleging, Judge
The Honorable William P. Greenaway, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 29A02-1004-DR-429

**June 29, 2012**

**David, Justice.**

In this case, after two hearings, the trial court issued a number of post-dissolution orders. Relevant to this appeal are the trial court's specific findings related to the emancipation of a child and the requirement of a parent to contribute toward a child's post-secondary educational expenses. On appeal, a trial court's orders should be afforded the appropriate level of deference, as reflected in the applicable standard of review.

This opinion clarifies various aspects of the emancipation statute and also affirms the majority of the trial court's rulings on emancipation and post-secondary educational expenses.

**Facts and Procedural History**

Annette (Oliver) Hirsch ("Mother") and Roger Lee Oliver ("Father") were married in 1985 and divorced in 1994. They had three children during their marriage: Katherine in 1986; Elizabeth in 1988; and Courtney in 1990. Over the years, following the dissolution, Mother and Father have litigated various issues related to the children. The present case primarily deals with Courtney, and to a lesser extent, Elizabeth.

On September 23, 2009, Father petitioned the trial court to emancipate Courtney. Mother initially contested Courtney's emancipation but later stipulated Courtney was emancipated no later than December 10, 2009. Mother also sought contribution from Father for Courtney's post-secondary educational expenses. The trial court held evidentiary hearings on these, and other, issues in October 2009 and February 2010.

Subsequently, in March 2010, the trial court issued an order that (1) declared Courtney emancipated as of September 23, 2009; (2) declined to require Father to contribute toward Courtney's post-secondary educational expenses; (3) determined Father's overpayment of child support and ordered Mother to repay that amount; (4) held Father owed Mother nothing toward Elizabeth and Courtney's 2009 medical expenses; (5) ordered Mother to pay $5,000 in attorney's fees to Father; and (6) ordered Mother to pay Father's current wife $227 in witness-expense fees.

Mother appealed, raising arguments related to the trial court's six rulings described above. A majority of the Court of Appeals reversed and remanded on all of the issues. Hirsch v. Oliver, 944 N.E.2d 956 (Ind. Ct. App. 2011). Judge Baker dissented on two points: the date of Courtney's emancipation and Father's obligation to contribute to Courtney's post-secondary educational expenses. Id. at 970–72 (Baker, J., concurring in part and dissenting in part).

We granted transfer to address issues related to Courtney's emancipation and post-secondary educational expenses. We summarily affirm the decision of the Court of Appeals on the remaining issues. Ind. Appellate Rule 58(A)(2).

2

## I. Emancipation

What constitutes emancipation is a question of law; whether emancipation has occurred is a question of fact. Dunson v. Dunson, 769 N.E.2d 1120, 1123 (Ind. 2002). A party seeking emancipation must establish it by competent evidence. Id. Indiana Code section 31-16-6-6 (Supp. 2010) deals with the termination of child support and emancipation.[1] It provides as follows:

> (a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age unless any of the following conditions occurs:
>
>> (1) The child is emancipated before becoming twenty-one (21) years of age. In this case the child support, except for the educational needs outlined in section 2(a)(1) of this chapter, terminates at the time of emancipation, although an order for educational needs may continue in effect until further order of the court.
>>
>> (2) The child is incapacitated. In this case the child support continues during the incapacity or until further order of the court.
>>
>> (3) The child:
>>
>>> (A) is at least eighteen (18) years of age;
>>>
>>> (B) has not attended a secondary school or postsecondary educational institution for the prior four (4) months and is not enrolled in a secondary school or postsecondary educational institution; and
>>>
>>> (C) is or is capable of supporting himself or herself through employment.
>
> In this case the child support terminates upon the court's finding that the conditions prescribed in this subdivision exist. However, if the court finds that the conditions set forth in clauses (A) through (C) are met but that the child is only partially supporting or is capable of only partially supporting himself or herself, the court may order that support be modified instead of terminated.
>
> (b) For purposes of determining if a child is emancipated under subsection (a)(1), if the court finds that the child:
>
>> (1) is on active duty in the United States armed services;
>>
>> (2) has married; or
>>
>> (3) is not under the care or control of:

---

[1] We note that Indiana Code section 31-16-6-6 has been amended by Public Law 111-2012, and the amendments take effect on July 1, 2012. The amendments change the automatic age of emancipation from twenty-one to nineteen. See 2012 Ind. Legis. Serv. P.L. 111-2012 (West). The amendments, however, do not affect our analysis in this case.

(A) either parent; or

(B) an individual or agency approved by the court;

the court shall find the child emancipated and terminate the child support.

This Court has stated that the purpose of the statute "is to require that parents provide protection and support for the welfare of their children until the children reach the specified age or no longer require such care and support." Dunson, 769 N.E.2d at 1124.

In this case, Father filed a "Verified Petition for Emancipation" and requested that the trial court "find the child of the parties, Courtney, emancipated for child support purposes" and "terminate [Father's] obligation to pay child support in this matter." Father did not cite a specific subsection of the relevant statute in his petition. The trial court's findings on Father's request for Courtney's emancipation likewise did not cite a particular subsection of Indiana Code section 31-16-6-6. However, in determining that Courtney was emancipated as of September 23, 2009, the trial court used language that mostly tracked the requirements of subsection (a)(3).[2] Specifically, the trial court referenced a requirement found only in subsection (a)(3)(B), by concluding that Courtney had not "engaged in any post-high school educational pursuits in

---

[2] The trial court's findings related to Courtney's emancipation were as follows:

> Courtney Oliver graduated high school in the spring of 2009. She routinely was employed during her Junior and Senior years of high school with the consent of [Mother], the custodial parent in this matter. Courtney has not completed any post-high school educational classes since her graduation from high school in the spring of 2009, although she is currently enrolled in classes at Ivy Tech. It remains uncertain as to whether she will finish those classes she is currently enrolled in. Courtney moved out of [Mother's] home and is currently co-habitating with her boyfriend. She moved out of her mother's home on or about December 10, 2009. [Mother] stipulated under oath that she agrees that Courtney was emancipated for child support purposes as of December 10, 2009. The Court, however, finds that since Courtney had graduated from high school and had not been engaged in any post-high school educational pursuits in which she completed any classes for more than four months subsequent to her graduation from high school, that Courtney is emancipated effective the date of the filing of [Father's] petition requesting such emancipation on September 23, 2009. Subsequent to her graduation from high school, Courtney worked at both L.A. Fitness and Big League Barbers, and had the capacity to work at least two jobs to provide for her own support.

Besides the fact that the trial court's findings above track the requirements of subsection (a)(3) of Indiana Code section 31-16-6-6, we also note that subsections (a)(2), (b)(1), and (b)(2) are inapplicable to this case, as Courtney is not alleged to be incapacitated, in the military, or married. Furthermore, subsection (b)(3) would not support a finding of emancipation as of September 23, 2009, because Courtney was living with Mother at that time and was most likely under her "care or control."

4

which she completed any classes for more than four months." Ultimately, the trial court found Courtney was emancipated as of September 23, 2009, which is the date Father filed his petition.

At this point, we pause to address how various decisions have interpreted subsection (a)(3)'s relation to the emancipation of a child. Importantly, the Court of Appeals touched on that issue, stating that "subsection (a)(3) of this statute does not technically concern the emancipation of a child, as opposed to termination of child support." Hirsch, 944 N.E.2d at 962 n.4. Some prior decisions have also noted this.[3] Other decisions, however, have classified subsection (a)(3) differently, concluding that it is, in fact, a basis for a court to find emancipation.[4]

On these opposing views, the Court of Appeals here stated, "this is largely a distinction without a difference, where the only practical consequence of emancipation, as is the case here, is termination of child support obligations." Hirsch, 944 N.E.2d at 962 n.4. Although this may be true here, it is prudent to articulate what (a)(3) covers to avoid confusion.

Subsection (a)(3) states that the duty to support an eighteen-year-old child terminates if the child has not met certain educational requirements and the child is supporting himself or herself through employment or is capable of doing so. Notably, subsection (a)(3) does not mention that emancipation occurs in conjunction with the termination of child support. On the other hand, if the eighteen-year-old child has met the stated educational requirements and is not capable of supporting himself or herself, then the duty to support the child continues, despite the

---

[3] See, e.g., Sexton v. Sedlak, 946 N.E.2d 1177, 1187 (Ind. Ct. App. 2011), trans. denied ("The real question addressed by the trial court and argued by Father is not whether [Child] is emancipated, but rather whether the requirements of Section 31-16-6-6(a)(3) for termination of child support are satisfied." (footnote omitted)); Carpenter v. Carpenter, 891 N.E.2d 587, 593 (Ind. Ct. App. 2008) ("Subsection (a)(3) does not deal with the 'emancipation' of a child; it merely identifies circumstances under which our legislature has determined a parent's obligation to pay child support should terminate."); Marshall v. Marshall, 601 N.E.2d 9, 12 n.2 (Ind. Ct. App. 1992) (stating that the subsection "does not define emancipation" but that "it terminates the parental obligation of support as a matter of law whether or not the court enters a finding of emancipation"); Brancheau v. Weddle, 555 N.E.2d 1315, 1317 n.1 (Ind. Ct. App. 1990).

[4] See, e.g., Butrum v. Roman, 803 N.E.2d 1139, 1144 (Ind. Ct. App. 2004), trans. denied ("According to [Indiana Code section 31-16-6-6], there are four ways to establish emancipation, specifically subsections (a)(3), (b)(1), (b)(2), and (b)(3)."); Connell v. Welty, 725 N.E.2d 502, 505 (Ind. Ct. App. 2000) (stating that "the party seeking to have a child declared *emancipated* prior to age twenty-one under the criteria of I.C. § 31-16-6-6(a)(3) bears the burden of proving the capacity of self-support" (emphasis added)).

child having reached the age of majority. In that circumstance, the eighteen-year-old child would not be considered fully emancipated: the dependent relationship between the parent and child continues because the child is still in need of support from the parents.

Decisions that view subsection (a)(3) as not concerning emancipation fail to see that emancipation must be a natural consequence of finding that the child has reached the age of majority, has not fulfilled the stated educational requirements, and is capable of supporting himself or herself. When an adult child fails to pursue secondary or post-secondary education as defined in the statute and is also capable of supporting himself or herself, there is no reason for the parents to be legally required to support the adult child.[5] And we cannot envision a situation where a trial court finds that the three requirements of (a)(3) are fulfilled but the child regardless remains unemancipated. In essence, if under Indiana Code section 31-16-6-6(a)(3), a trial court determines there is no longer an obligation of the parent to support the child, emancipation has necessarily occurred because the child has reached the age of majority and is no longer under any legal disability by virtue of being a minor. Accordingly, once a trial court finds that subsection (a)(3)'s requirements have been met and child support terminates, emancipation occurs as a matter of law.[6]

Here the Court of Appeals noted the correct standard for an appellate court reviewing a trial court's determination regarding the date of emancipation: "we will neither reweigh the evidence nor assess the credibility of witnesses, and we will not set aside the finding of the trial

---

[5] This is assuming that the child is not incapacitated. See I.C. § 31-16-6-6(a)(2).

[6] This conclusion does not conflict with this Court's decision in Dunson v. Dunson, 769 N.E.2d 1120 (Ind. 2002), which evaluated a different subsection of the emancipation statute. Dunson focused on subsection (b)(3) of Indiana Code section 31-16-6-6, which states that a child is emancipated if the court determines the child "is not under the care or control of either parent." I.C. § 31-6-6-6(b)(3)(A). This Court disagreed with the view that subsection (b)(3) would allow a court to order emancipation if it found only that a child was not under the care and control of either parent. Dunson, 769 N.E.2d at 1123. This Court stated that the "language of subsection (b)(3), viewed in isolation, leads to the conclusion that neither self-support nor initiative of the child is required for emancipation" but that "both stare decisis and legislative acquiescence" support a different view. Id. at 1124. Ultimately, this Court determined that emancipation under subsection (b)(3) required *both* "the child's initiative and the child's self-support." Id. at 1125. Underlying that conclusion was a concern that without those requirements, parents would be "permitted to 'divorce their children' and avoid paying child support simply by sending their children to live with a third party or, worse yet, just throwing the child out of the house." Id. at 1124. These concerns would not be implicated by finding a child emancipated after the requirements of subsection (a)(3) are met.

court unless it is clearly erroneous." Hirsch, 944 N.E.2d at 963 (citing Connell v. Welty, 725 N.E.2d 502, 504 (Ind. Ct. App. 2000)). "'We will not reverse unless there is a total lack of supporting evidence or the evidence is undisputed and leads solely to a contrary conclusion.'" Id. (quoting Connell, 725 N.E.2d at 504). The Court of Appeals ultimately determined that the trial court "clearly erred" in concluding that Courtney was emancipated at any time prior to December 10, 2009, which is the date Mother conceded Courtney was emancipated.[7] Id. In making that determination, the Court of Appeals found that the requirements of subsections (a)(3)(B) and (C) had not been met. Id. at 964–65.

The Court of Appeals first noted that for child support to terminate under subsection (a)(3) "both (1) a lack of attendance *and* (2) a lack of enrollment at an education institution" are required for the prior four months. Id. at 964. The court then determined that "[t]he undisputed evidence is that at all relevant times . . . [Courtney] was in fact enrolled as a student at Ivy Tech." Id. In reaching this conclusion, the Court of Appeals applied a definition of "is enrolled" from Butrum v. Roman, 803 N.E.2d 1139, 1145 (Ind. Ct. App. 2004), trans. denied. Hirsch, 944 N.E.2d at 964. The Court of Appeals in Butrum noted that Title 31 of the Indiana Code did not define "enroll" and thus settled on the following definition: "'is enrolled' as used in Indiana Code § 31-16-6-6 means more than being involved in the application process; rather, it means that one has been accepted to the institution and is officially registered at the institution as a student." 803 N.E.2d at 1145.

As to subsection (a)(3)(C), the Court of Appeals found insufficient evidence to support the trial court's conclusion that Courtney was "in fact self-supporting, or capable of self-support." Hirsch, 944 N.E.2d at 964. It determined that although the trial court found that Courtney had worked at two different locations after graduating from high school, those facts did "little more than establish that Courtney was physically capable of working." Id. The Court of Appeals noted that Courtney never worked more than twenty hours per week and that at most she

---

[7] The Court of Appeals "note[d] that neither a child's employment nor independent living outside a parent's household necessarily means the child is emancipated." Hirsch, 944 N.E.2d at 963 n.5 (citing In re Marriage of Brown, 597 N.E.2d 1297, 1300 (Ind. Ct. App. 1992)). The Court of Appeals nonetheless presumed that Courtney was emancipated as of December 10, 2009, "given Mother's concession on appeal." Id. We agree that a child's employment or independent living would not automatically render a child emancipated. This is also true of a parent's concession regarding a child's emancipation. Because of our disposition of this issue, however, we need not explore those points further.

7

was paid $8 per hour.  Id.  The Court of Appeals concluded that "[t]here is no evidence that Courtney possessed job skills that could lead to greater earnings."  Id.

Judge Baker dissented on both the enrollment and self-support issues.  First, he stated that the definition of "enroll" under the circumstances did not go "far enough."  Id. at 971. (Baker, J., concurring in part and dissenting in part).  He explained that "[a]ccepting such a broad definition of the term means that a student could conceivably be 'enrolled' in a postsecondary educational institution in perpetuity without ever actually taking any classes."  Id.  Judge Baker suggested a modification to the Butrum definition: "enrolled, in the context of subsection (a)(3), means that one has been accepted to the institution, is officially registered at the institution as a student, and in good faith is attending or intends to attend the institution in the foreseeable future."  Id.  The dissent noted that here the trial court heard testimony regarding Courtney dropping all of her classes after attending school for only two weeks, Courtney telling her father that college was not for her, and Courtney saying that she did not foresee returning to school.  Id.  Furthermore, although Courtney had re-enrolled in classes in January 2010, the trial court had noted in its order "its skepticism that she would complete those classes."  Id.  Judge Baker concluded, "It is evident that the trial court assessed [Courtney's] credibility and found it wanting, and I believe that we should not second-guess that assessment on appeal.  Consequently, I would find that the trial court did not err by finding that Courtney was not enrolled in Ivy Tech on September 23, 2009."  Id.  Father urges us to adopt the dissent's definition of "enrolled," stating that the majority's broad interpretation of the term could result in a child avoiding emancipation by enrolling in classes indefinitely without ever intending to attend the classes.

We agree with the dissent and Father on the issue of enrollment.  The present case, as Judge Baker noted, presents the circumstances to demonstrate why the Butrum definition of "is enrolled" is too broad.  Inherent in the definition of "is enrolled" is a requirement that all parties act in good faith; otherwise, an eighteen-year-old child could register for classes and never attend them while his or her parent continues, as required by law, to pay child support.  A parent should not be burdened with the obligation of supporting his or her adult child in these circumstances unless that child, in good faith, is furthering or intends to further her or her education.  Accordingly, the more appropriate definition of subsection (a)(3)'s "is enrolled" is the one formulated by the dissent: is accepted to the institution, is officially registered at the institution as

a student, and in good faith is attending or intends to attend the institution in the foreseeable future. Under that definition, the trial court here concluded that Courtney's actions in attending classes for two weeks and subsequently withdrawing neither constituted attending school in good faith nor constituted intending to attend school in good faith.

On the issue of self-support, Judge Baker noted that the trial court heard evidence on Courtney's employment during and after high school. Hirsch, 944 N.E.2d at 971 (Baker, J., concurring in part and dissenting in part). And although Mother focused on Courtney's alleged anxiety disorder, the dissent noted that there was no "expert evidence supporting that claim" and that "the trial court was free to discount the testimony" regarding it. Id. Judge Baker concluded that the majority's result "necessarily require[d] reweighing the evidence." Id. We agree. The majority here, although stating the correct standard of review, does not give proper deference to the trial court's finding on self-support. The trial court here explicitly found that Courtney "had the capacity to work at least two jobs to provide for her own support" after hearing testimony on the issue.[8] Although the majority found reasons why this might not support a finding of self-support, we cannot conclude that there is a total lack of supporting evidence for the trial court's contrary finding that Courtney was capable of self-support.

Thus, we disagree with the Court of Appeals conclusions that the trial court's findings regarding Courtney's enrollment and capability of self-support were clearly erroneous. As stated above, it was not clearly erroneous for the trial court to find that Courtney was not enrolled in post-secondary education despite her two-week attendance to community college classes. However, the record does not support the trial court's finding that this lack of enrollment occurred "for more than four months subsequent to her graduation from high school." Here the record shows that Courtney graduated sometime in the spring of 2009. The most specific information was given by Father, when he stated that he believed Courtney graduated during the "[f]irst week of June of 2009." Based on this information, we find that the evidence does not support the trial court's finding that Courtney had not been engaged in educational pursuits for four months prior to September 23, 2009, the date the trial court declared her emancipation.

---

[8] The trial court made this determination after finding that Courtney had worked two part-time jobs simultaneously. There is no indication that the trial court believed that Courtney's capability of self-support was based on her ability to work two full-time jobs at the same time.

September 23, 2009, is the date Father filed the emancipation petition, and we note that "the assertion of emancipation will be effective as of the date of emancipation rather than as of the date of filing." Donegan v. Donegan, 605 N.E.2d 132, 133 (Ind. 1992). And the Court of Appeals was correct in stressing that "[w]here there have been no material changes in the facts and circumstances relevant to the issue of emancipation, a trial court finding that a child was emancipated as of a certain arbitrary date . . . is clearly erroneous." Hirsch, 944 N.E.2d at 963.

Accordingly, we remand to the trial court to determine the proper date of Courtney's emancipation. Using that date, the trial court must then recalculate the amount of child support Father overpaid in accordance with the portions of the Court of Appeals opinion that we summarily affirm.

## II. Post-secondary Educational Expenses

The issue of whether Father should be required to contribute toward Courtney's post-secondary educational expenses is distinct from the issue of the date of Courtney's emancipation. Knisely v. Forte, 875 N.E.2d 335, 340 (Ind. Ct. App. 2007). Indiana Code section 31-16-6-2 (2008) gives guidance regarding contribution toward post-secondary educational expenses, listing certain factors to take into account, such as "the child's aptitude and ability," "the child's reasonable ability to contribute to educational expenses," and "the ability of each parent to meet these expenses," among other things.[9] Furthermore, Child Support Guideline 8(b) lists expenses

---

[9] Indiana Code section 31-16-6-2 provides in full as follows:

(a) The child support order or an educational support order may also include, where appropriate:
    (1) amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account:
        (A) the child's aptitude and ability;
        (B) the child's reasonable ability to contribute to educational expenses through:
            (i) work;
            (ii) obtaining loans; and
            (iii) obtaining other sources of financial aid reasonably available to the child and each parent; and
        (C) the ability of each parent to meet these expenses;
    (2) special medical, hospital, or dental expenses necessary to serve the best interests of the child; and
    (3) fees mandated under Title IV-D of the federal Social Security Act (42 U.S.C. 651 through 669).

that may be included within a post-secondary educational expense order, such as tuition, books, lab fees, supplies, student activity fees, room and board under certain circumstances, transportation, car insurance, clothing, entertainment, and incidental expenses. This guideline also explicitly states that "[i]t is discretionary with the court to award post-secondary educational expenses and in what amount." Child Supp. G. 8(b). It continues that the court should "weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense." Id.

Here the record reflects that Courtney withdrew from her classes at Ivy Tech and then re-enrolled the following semester. The Court of Appeals addressed the propriety of requiring contribution to the post-secondary educational expenses "'of a once discontinued but now resumed higher education.'" Hirsch, 944 N.E.2d at 965 (quoting Thiele v. Thiele, 479 N.E.2d 1324, 1329 (Ind. Ct. App. 1985)). Thiele listed various factors for a court to consider in this circumstance:

> Among the facts which may be considered in making such a determination are— (1) the length of time elapsed between the interruption and resumption of the educational program; (2) the age of the child; (3) the financial ability of the parent or parents; (4) whether the child and the parents intended to abandon permanently the program of higher education when withdrawing from it; (5) the reasonableness of the child's present desire and purpose in returning to an institution of higher learning; (6) the activities of the child, particularly in relation to employment or business during the hiatus; (7) other provisions made for the child by the parent or parents; (8) the station in life of the child and the parent or parents; (9) any other facts or circumstances reasonably related to the need of the child for such education, the ability of the parent or parents to provide such education, and the reasonableness or equity in requiring the parent or parents to provide educational expenses.

479 N.E.2d at 1329. The trial court found that Father was not responsible for educational expenses regarding Courtney after hearing testimony from Father, Mother, and Courtney. A majority of the Court of Appeals reversed, stating that the record did not support "any reasonable, equitable basis upon which to relieve Father of any and all obligation to assist

---

(b) If the court orders support for a child's educational expenses at a postsecondary educational institution under subsection (a), the court shall reduce other child support for that child that:
    (1) is duplicated by the educational support order; and
    (2) would otherwise be paid to the custodial parent.

Courtney in her post-secondary educational pursuits." Hirsch, 944 N.E.2d at 966. The majority noted that although the record showed that Father's income had decreased, he had expressed his "willingness" to contribute to Courtney's educational expenses. Id. The majority also noted that although Father had commented that he believed Courtney intended to abandon her education after she withdrew from classes, there was "scant indication" that this was really Courtney's intention. Id. The majority then listed other factors that supported a conclusion that Father should be obligated to pay for Courtney's post-secondary educational expenses and determined that "the trial court abused its discretion in terminating Father's obligation." Id.

Judge Baker dissented, believing that the majority "necessarily" reweighed the evidence on this issue. Id. at 972 (Baker, J., concurring in part and dissenting in part). He noted that the trial court heard evidence that Courtney was able to work through two years of high school, that she had received a 100% tuition scholarship, and that she had held two jobs following graduation. Id. He further noted that the trial court heard testimony on how Father's income had decreased from $111,000 in 2008 to $50,000 as of September 2009. Id. Finally, the dissent noted that "Father also testified that Courtney told him, after withdrawing from all classes after two weeks, that college was not for her and she did not foresee returning to college." Id. Finding that all of that evidence was relevant to the factors set forth in Indiana Code section 31-6-6-2, the controlling statute, the dissent would have affirmed the trial court's ruling on the issue. Father agrees with the dissent's analysis, stating that the trial court was within its discretion when it considered and applied the evidence before making its ruling.

An appellate court reviews a trial court's decision to order the payment of post-secondary educational expenses for an abuse of discretion. Carr v. Carr, 600 N.E.2d 943, 945 (Ind. 1992). Accordingly, we affirm the trial court unless the decision is against the logic and effect of the facts and circumstances before the trial court. Id.

In this case, we cannot conclude that the trial court abused its discretion. Although the majority's analysis of the evidence is intricate, we believe that the analysis is simply a reweighing of the evidence, which is not permitted under the applicable standard of review. The dissent is correct in noting the evidence supported the trial court's decision on this issue, and we should not second-guess the trial court's determination when it is in the best position to judge the

12

credibility of witnesses. Accordingly, we affirm the trial court's ruling on post-secondary educational expenses.

## Conclusion

We affirm the trial court's ruling that Father is not obligated to contribute to Courtney's post-secondary educational expenses. We remand to the trial court to determine the correct date of Courtney's emancipation.

Dickson, C.J., and Massa, J., concur.

Sullivan, J., dissents with a separate opinion in which Rucker, J., concurs.

**Sullivan, Justice, dissenting.**

Believing that the Court has impermissibly rewritten and incorrectly interpreted Indiana Code section 31-16-6-6, I respectfully dissent.

The Court says that when the circumstances described in Indiana Code section 31-16-6-6(a)(3) exist, then a child is emancipated for purposes of Indiana law. This is not correct. E.g., Sexton v. Sedlak, 946 N.E.2d 1177, 1186-87 (Ind. Ct. App. 2011), trans. denied; Carpenter v. Carpenter, 891 N.E.2d 587, 593 (Ind. Ct. App. 2008); Marshall v. Marshall, 601 N.E.2d 9, 12 & n.2 (Ind. Ct. App. 1992) (interpreting former version of statute); Brancheau v. Weddle, 555 N.E.2d 1315, 1316-17 & n.1 (Ind. Ct. App. 1990) (same). Contra Butrum v. Roman, 803 N.E.2d 1139, 1144 (Ind. Ct. App. 2004), trans. denied; Connell v. Welty, 725 N.E.2d 502, 505 (Ind. Ct. App. 2000). Indiana Code section 31-16-6-6 sets forth three situations in which a child support obligation does not terminate at age 21. Subsection (a)(1) specifies that one of those situations is emancipation, and subsection (b) defines "emancipation." Ind. Code § 31-16-6-6(a)(1), (b) (2008). If the Legislature intended the circumstances of subsection (a)(3) to constitute emancipation, it would have either included those circumstances within subsection (a)(1) or defined "emancipation" in subsection (b) to include them.

That having been said, I acknowledge that with the Legislature's recent action reducing the age of emancipation from 21 to 19 effective July 1, 2012, see Pub. L. No. 111-2012, §§ 1-2, 2012 Ind. Acts 1590, 1590-91 (amending I.C. §§ 31-14-11-18 and 31-16-6-6), the consequences of the Court's decision are likely to be insignificant.

Rucker, J., concurs.